IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In the Matter of: | ) | Case No. BK25-80772 |
| | ) | |
| BRENT S. JACKSON, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

# Findings and Conclusions Regarding Objection to Claim No. 4-1

Philip M. Kelly, the Chapter 7 trustee objected to the proof of claim filed by David Raymond (Doc. #53). The Chapter 7 trustee appeared. Michael T. Eversden appeared for Mr. Raymond. The trustee's objection is sustained. Raymond's claim is disallowed. The claim is a contingent claim for contribution from the debtor on a state court judgment for which Raymond and the debtor are both liable, triggering 11 U.S.C. § 502(e)(1)(B). Raymond concedes each element of § 502(e)(1)(B). The statute mandates disallowance.

## Findings of Fact

Trane U.S. Inc. ("Trane") sued Raymond, the debtor, and Facility Advocates, LLC, in the District Court of Douglas County, Nebraska, at Case No. CI 22-3093.[1] Trane asserted claims for breach of contract and breach of the duty of loyalty against the debtor and Raymond. It asserted various tort claims and a claim for civil conspiracy against all three defendants. A jury awarded Trane damages, assessing them defendant by defendant:

| Claim | Raymond | Debtor | Facility Advocates |
|---|---|---|---|
| Breach of Contract | $125,000 | $125,000 | N/A |
| Tort Claims | $2,616,136 | $1,579,600 | $1,425,600 |
| Duty of Loyalty | $329,367 | $108,071 | N/A |
| Total | $3,070,503 | $1,812,671 | $1,425,600 |

[1] Facility Advocates filed a proof of claim, to which the trustee also objected. (Doc. #54). The objection was resisted on similar grounds. These findings and conclusions apply equally to Facility Advocates' claim. A separate order will be entered sustaining the separate objection and disallowing Facility Advocates' claim.

According to Raymond, the state court entered an order confirming the nature of the judgment: The contract and duty-of-loyalty damages are several. The jury assessed the tort damages against each defendant for its own misconduct. Because the jury found all three defendants were co-conspirators, they are jointly and severally liable for the tort damages.[2]

The judgment is on appeal to the Nebraska Supreme Court. The issues appealed include whether the judgment is joint and several as between Raymond and the debtor. The case is set for argument in November 2026. Raymond posted a supersedeas bond of $1,089,646.50, which he describes as "individualized" to him and securing "his own exposure."[3]

The debtor filed his Chapter 7 petition on July 28, 2025. Raymond filed Claim No. 4-1, asserting that "in the event the appeal of the Judgment is unsuccessful," he holds a contingent claim "for contribution or indemnity for any portion of the Judgment that he pays that is attributable to the Debtor."[4] Trane also filed a claim in the amount of $1,856,035.95, consisting of $1,812,671.00 in principal and $43,364.95 in post-judgment interest.

The trustee liquidated the debtor's estate and recovered assets. He filed a final report seeking to distribute $101,929.58 to general unsecured creditors. In his report, he proposed to pay Trane, the largest unsecured creditor, $100,642.79. He also proposed to allow Raymond's claim, "but pay zero" because "[n]o amounts were claimed." Raymond objected to the final report. The court directed the trustee to object to the claim so its allowance or disallowance could be decided on the merits.[5] The trustee filed the objection, which is now before the court. In it he asserts Raymond's claim is a

---

[2] The order is not in the record. Raymond's description is accepted for purposes of these findings and conclusions.

[3] Similarly, Facility Advocates states it posted a supersedeas bond of $848,966.50, which is "individualized to Facility Advocates and secures its own exposure."

[4] If his appeal is successful, Raymond will have no contribution claim. And he has no contribution claim for the breach of contract or duty of loyalty damages. Whatever claim he holds can be based only on the $1,579,600 in tort damages assessed against the debtor.

[5] A filed claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a); In re Archdiocese of Saint Paul & Minneapolis, 579 B.R. 188, 196 (Bankr. D. Minn. 2017). A claim filed in an unknown amount is not disallowed by assigning it a value of zero without an objection.

contingent claim for reimbursement or contribution that must be disallowed under § 502(e)(1)(B).

Raymond resisted. He does not dispute his claim meets the statute: "Claim No. 4-1 falls within Section 502(e)(1)(B), and Raymond does not contend otherwise." He seeks three alternative forms of relief. He asks the court to overrule the objection. He seeks a continuance until the Nebraska Supreme Court rules on the appeal. And he asks the court to defer ruling, estimate his claim under § 502(c), and direct the trustee to hold a reserve for the estimate.

Conclusions of Law

Disallowance Under § 502(e)(1)(B) Is Mandatory

Section 502(e)(1) mandates disallowance of Raymond's claim. It provides in relevant part:

> Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that— ... (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution[.]

11 U.S.C. § 502(e)(1)(B).

The statute "preclude[s] redundant recoveries on identical claims against insolvent estates in violation of the fundamental Code policy fostering equitable distribution among all creditors of the same class." Potter v. CNA Ins. Cos. (In re MEI Diversified, Inc.), 106 F.3d 829, 831 (8th Cir. 1997) (quoting Juniper Dev. Grp. v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 923 (1st Cir. 1993)). It also allows "distribution to unsecured creditors without a reserve for these types of contingent claims when the contingency may not occur until after the several years it often takes to litigate the underlying lawsuit." In re Drexel Burnham Lambert Grp., Inc., 148 B.R. 982, 986 (Bankr. S.D.N.Y. 1992) (quoting In re Wedtech Corp., 85 B.R. 285, 290 (Bankr. S.D.N.Y. 1988)). Both purposes are implicated.

Disallowance requires three elements: "(1) the claim is for reimbursement, (2) the claimant is 'liable with the debtor', and (3) the claim is contingent as of the time of its allowance or disallowance." In re Pettibone Corp., 110 B.R. 837,

847 (Bankr. N.D. Ill. 1990); accord In re APCO Liquidating Tr., 370 B.R. 625, 631 (Bankr. D. Del. 2007).

Raymond concedes all three elements. The concession is well taken. A claim for indemnity, as well as one for contribution, is a claim for reimbursement. In re Pettibone, 110 B.R. at 848; In re Drexel, 148 B.R. at 985. The debtor and Raymond are jointly and severally liable to Trane for the conspiracy damages. And the claim is contingent. "The primary example of a contingent claim . . . is when 'a codebtor has not paid the creditor and [thereby] established his right to payment from the debtor.'" In re MEI, 106 F.3d at 832 (quotation omitted).

Contingency is measured on the date of the ruling on the objection, and it "relates to both payment and liability." In re Drexel, 148 B.R. at 986. A co-obligor's claim "is contingent until their liability is established . . . and the co-debtor has paid the creditor." Id. at 987 (emphasis added); In re APCO, 370 B.R. at 636. Raymond's liability is on appeal, and he has paid nothing.

Raymond's request to overrule the objection must be denied. When the three elements are met, "the court shall disallow" the claim. 11 U.S.C. § 502(e)(1)(B); In re Pinnacle Brands, Inc., 259 B.R. 46, 56 (Bankr. D. Del. 2001). That the estate is being liquidated rather than reorganized "is insignificant for the purposes of determining the applicability of section 502(e)(1)(B). The Code makes no such distinction." In re Pinnacle Brands, 259 B.R. at 56.

Disallowance Is Not Forfeiture

Raymond is correct in stating disallowance under § 502(e)(1)(B) is not a forfeiture. Section 502(e)(2) provides:

> A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

11 U.S.C. § 502(e)(2). Sections 502(e)(1)(B) and 502(e)(2) "serve essentially to defer allowing claims for reimbursement until they are no longer contingent. Once such a claim is no longer contingent, § 502(e)(2) permits it to be allowed as a pre-petition claim." In re Pettibone, 110 B.R. at 846-47. A co-obligor

facing disallowance "may elect to cause its contingent contract claim to become 'fixed' prior to disallowance . . . by itself satisfying the debt due the creditor of the debtor estate, leaving the entity as the sole holder of a claim against the estate based on that debt." In re Hemingway Transp., 993 F.2d at 923-24; see also In re Lull Corp., 162 B.R. 234, 238 (Bankr. D. Minn. 1993). Contribution claims arising from joint tort liability are treated the same way: "to the extent that the parishes eventually make payments to the tort creditors, their claims may be allowed." In re Archdiocese, 579 B.R. at 197.

If the contingency is resolved after disallowance, the claimant may seek reconsideration. 11 U.S.C. § 502(j). A bankruptcy court "has the power to reconsider the allowance or disallowance of a claim for cause by virtue of § 502(j) and Bankruptcy Rule 3008." Pettry v. Patriot Coal Corp. (In re Patriot Coal Corp.), 511 B.R. 563, 566 (B.A.P. 8th Cir. 2014).[6]

A Continuance Is Unavailing

The requested continuance would not change the result. Contingency is measured on the date the court rules. The Nebraska Supreme Court's decision will not fix Raymond's claim. Payment will. If the judgment is reversed, Raymond's claim disappears. If it is affirmed, the claim remains contingent until Raymond pays more than his own share of the common liability. His bond secures his own exposure, and it is roughly a third of the damages assessed against him alone. The decision will not come until after oral argument in November, and payment, if any, only after the decision. Nothing in the record suggests the claim will be fixed within any defined period.

The court in In re Agway rejected a similar request to "defer disallowance of the balance of [the] claim until the end of the case." In re Agway, Inc., 2008 WL 2827439, at *3 (Bankr. N.D.N.Y. July 18, 2008). In declining, the court reasoned:

---

[6] Raymond asks that the order specifically "provide that any disallowance is without prejudice and subject to reconsideration under 11 U.S.C. § 502(j)." Under § 502(j), allowance or disallowance can be reconsidered for cause. The statute provides what Raymond requests. No order is necessary. To the extent Raymond asks the court to find now that the determination of the appeal and payment would constitute cause, the request is denied. A pre-determination of cause on a hypothetical is not appropriate.

> F & D has a remedy pursuant to Code § 502(j) to have its claim(s) reconsidered once the claim(s) has become fixed and liquidated. The Court is at a loss to understand the advantage to F & D in having the Court defer indefinitely its ruling on the disallowance of F & D's claim(s). It has suggested that this will result in its having to make several motions in the future pursuant to Code § 502(j). However, if it were willing to wait for the Court to delay ruling on the disallowance of its claim(s) to some date in the future, then it should have no problem delaying any requests for reconsideration of the disallowance of its claim(s) pursuant to Code § 502(j) as well. It appears to be a distinction without a difference as far as the treatment of its claim(s) is concerned.

Id. at *4. The same is true here, except that here the difference has a cost. The estate would remain open, with its funds undistributed and administrative expenses accruing.[7]

Estimation and Reserve Are Not Available

Raymond's claim cannot be estimated under § 502(c) and reserved. Neither is an available remedy. Section 502(e)(1) applies "[n]otwithstanding subsections (a), (b), and (c)." 11 U.S.C. § 502(e)(1). As the court explained in In re Drexel:

> Although § 502(c) provides for the estimation of contingent claims, the section only applies to direct contingent claims because § 502(e)(1)(B) expressly provides for disallowance of contingent claims of a party secondarily liable with the debtor "[n]otwithstanding subsections (a), (b), and (c) of this section." 11 U.S.C. § 502(e)(1)(B). Although a creditor's claim which is contingent may give a right to estimation, "a person secondarily liable to a creditor is not in the same position as the [direct] creditor." Thus, the claim may be estimated only if it is not disallowed by § 502(e)(1)(B).

In re Drexel, 148 B.R. at 991 (citation modified) (quoting In re Pacor, Inc., 110 B.R. 686, 690 (E.D. Pa. 1990)); see also In re Hemingway Transp., 993 F.2d at

[7] Based on the trustee's final report, the estate has paid his bank between $25.68 and $128.05 per month in service fees. If Raymond were granted a continuance, the trustee would incur several months of additional fees, nearly all at Trane's expense.

926 n.12 (noting alternatives such as placing a codebtor's distribution in trust "find little support in the categorical language of section 502(e)(1)(B)").[8]

The authority Raymond cites to support a reserve is not applicable. He cites In re Health Diagnostic Lab'y, Inc., 551 B.R. 218, 235 (Bankr. E.D. Va. 2016), and Interco Inc. v. ILGWU Nat'l Ret. Fund (In re Interco Inc.), 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992). Neither case involved a claim subject to disallowance under § 502(e)(1)(B). In In re Health Diagnostic the court approved a provision in a Chapter 11 liquidating plan allowing a liquidating trustee to estimate claims and set reserves during the distribution process. The court in In re Interco estimated a direct pension withdrawal-liability claim "for the purpose of allowance."

Nor does equity mandate a different answer. Any equitable power the court has under 11 U.S.C. § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." Law v. Siegel, 571 U.S. 415, 421 (2014) (quoting 2 Collier on Bankruptcy ¶ 105.01[2], p. 105-6 (16th ed. 2013)). The Bankruptcy Code requires disallowance. It does not authorize estimation and reserve on equitable grounds. Equity cannot intercede.

---

[8] Raymond asserts equitable relief is required to avoid an "injustice." No injustice is evident. Even if Raymond's claim were allowed, it would benefit him minimally. Trane's judgment includes joint components and several components. Under Nebraska law, a payment that neither the debtor nor the creditor has applied is applied by the court "in such manner, in view of all of the circumstances, as is most in accord with justice and equity," and the rule "applies to involuntary, as well as to voluntary, payments." Rickus v. Rickus, 172 N.W.2d 628, 630-31 (Neb. 1969). A distribution from a bankruptcy estate is an involuntary payment, and ratable application is a common result. See First Nat'l City Bank v. Kline, 439 F. Supp. 726, 729 (S.D.N.Y. 1977) (applying distribution from a bankrupt borrower's estate "ratably, to all the debts" to determine a guarantor's remaining liability). Applied pro rata, 87.14% of Trane's $100,642.79 distribution, or $87,702.26, would reduce the conspiracy damages for which Raymond and the debtor are jointly liable. If Raymond's claim were allowed in the full $1,579,600, the dividend would fall to about 2.95%. Raymond would receive $46,542.62, and only $47,656.06 of Trane's reduced $54,687.75 distribution would reduce the conspiracy damages, for a combined benefit of $94,198.68. That is $6,496.42 more than Raymond gains from the payment to Trane alone, and it comes from Trane's recovery on the debtor's several liability and from the other creditors. Even that sum assumes § 509(c) would not redirect Raymond's dividend to Trane. See infra note 9. What matters to Raymond is how Trane's distribution is applied, not whether his claim is allowed, and the court cannot make that determination.

Raymond's principal equitable argument overstates In re Hemingway Transp. Raymond argues the First Circuit "cautioned against allowing § 502(e)(1)(B) to inflict a pointless loss on a co-obligor whose payment would fix its claim." In re Hemingway Transp. involved a pre-petition CERCLA claim the EPA held against the debtor. Juniper purchased the contaminated land from the debtor in possession. CERCLA imposed liability on Juniper as subsequent owner. The EPA refused to file a claim in the bankruptcy case, causing the First Circuit to note that there was only "a remote 'double-dipping' prospect," and disallowance "may occasion a pointless financial loss to Juniper and result in a windfall to the chapter 7 estate." In re Hemingway Transp., 993 F.2d at 926, 928. The court required a surrogate claim for the EPA under § 501(c) as a precondition to disallowance. Here, Trane filed its own claim for the debtor's share of the judgment. The risk of paying the same debt twice is not remote. The risk exists. This case presents the competition between creditor and co-obligor that the statute exists to prevent. In re MEI, 106 F.3d at 831.[9]

## Conclusion

For the reasons stated above, the trustee's objection (Doc. #53) is sustained. Claim No. 4-1 is disallowed under 11 U.S.C. § 502(e)(1)(B). Raymond's requests to continue the hearing, defer ruling, estimate the claim under § 502(c), and require the trustee to hold a reserve (Doc. #58) are denied. A separate order will be entered.

Dated: October 14, 2026

BY THE COURT:

/s/ Brian S. Kruse
Brian S. Kruse
Chief Bankruptcy Judge

---

[9] Independently, even if Raymond's claim became fixed and were allowed, it would be subordinated to Trane's claim under 11 U.S.C. § 509(c), which subordinates a claim for reimbursement or contribution of an entity that is liable with the debtor until the common creditor's claim is paid in full.